1
2
3
4
5
6                 UNITED STATES DISTRICT COURT

7                 EASTERN DISTRICT OF CALIFORNIA

8

9    JOSE MIGUEL DE LA CRUZ,              Case No. 1:20-cv-00997-ADA-EPG (PC)

10              Plaintiff,                 FINDINGS AND RECOMMENDATIONS,
                                           RECOMMENDING THAT DEFENDANTS'
11        v.                               MOTION FOR SUMMARY JUDGMENT BE
                                           DENIED
12   OSCAR GALLOWAY, et al.,
                                           (ECF No. 42)
13              Defendants.
                                           OBJECTIONS, IF ANY, DUE WITHIN
14                                         TWENTY-ONE DAYS

15

16

17   **I.     INTRODUCTION**

18        Jose Miguel Da Le Cruz ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma*

19   *pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  This case is proceeding

20   on Plaintiff's claims against defendants Gates and Galloway ("Defendants") for deliberate

21   indifference in violation of the Eighth Amendment based on Plaintiff's allegations that

22   Defendants failed to provide Plaintiff with treatment for his hearing impairment.  (ECF Nos. 14

23   & 17).[1]

24        On May 13, 2022, Defendants filed a motion for summary judgment "on the grounds

25   that: (1) Plaintiff did not have a serious medical need for a right cochlear implant; (2)

26   Defendants were not deliberately indifferent to Plaintiff's serious medical needs; (3)

27   _____

28        [1] Page numbers refer to the ECF page numbers stamped at the top of the page.

                                           1

Defendants were not involved in denying access to an appointment with an Ear, Nose and Throat specialist in 2016; and (4) Defendants are entitled to qualified immunity."  (ECF No. 42, p. 1).  Defendants' motion generally argues that, although it is undisputed that Plaintiff cannot hear out of his right ear, they had no obligation to treat that condition because he could hear sufficiently out of his other ear.  On October 11, 2022, Plaintiff filed his opposition.  (ECF No. 55).  On October 25, 2022, Defendants filed their reply.  (ECF No. 56).

For the reasons that follow, the Court will recommend that Defendants' motion for summary judgment be denied.

## II.   CLAIMS AT ISSUE

This case is proceeding on Plaintiff's claims against defendants Gates and Galloway ("Defendants") for deliberate indifference in violation of the Eighth Amendment.  (ECF Nos. 14 & 17).

In allowing the claims to proceed, the Court found as follows:

> Without deciding the issue, the Court finds that Plaintiff's allegation that he is deaf in one ear is sufficient on [the serious medical need] issue to proceed past screening.  See Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*) ("Examples of serious medical needs include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.") (alteration in original) (citation and internal quotation marks omitted).

> Plaintiff has also sufficiently alleged that these two defendants knew of Plaintiff's serious medical issue because it was documented in medical records that both of these defendants saw, but did not provide any treatment.  Thus, the Court finds that, for screening purposes, Plaintiff has sufficiently alleged that defendant Galloway and defendant Gates were deliberately indifferent to his serious medical needs.

(ECF No. 16, pgs. 8-9; ECF No. 17) (footnote omitted).

All other claims and defendants were dismissed at screening.  (ECF No. 17).

\\\

\\\

\\\

### III.    MOTION FOR SUMMARY JUDGMENT

a.   Defendants' Motion (ECF No. 42)

Defendants filed a motion for summary judgment on May 13, 2022.  (ECF No. 42).
Defendants "move for summary judgment on the grounds that: (1) Plaintiff did not have a
serious medical need for a right cochlear implant; (2) Defendants were not deliberately
indifferent to Plaintiff's serious medical needs; (3) Defendants were not involved in denying
access to an appointment with an Ear, Nose and Throat specialist in 2016; and (4) Defendants
are entitled to qualified immunity."   (Id. at 1).

Defendants allege that defendant Gates is the Chief, Health Care Correspondence &
Appeals Branch Policy and Risk Management Service Coordinator, and Defendant Galloway is
a Correctional Health Services Administrator II at California State Prison, Corcoran.  (ECF No.
42-1, p. 2).

Defendants further allege that in reviewing Plaintiff's grievance, defendant Galloway
reviewed Dr. Suesberry's report indicating that the only treatment option for Plaintiff's right
ear was a right cochlear implant.  (Id. at 3).  He also reviewed medical records "indicating that
[Plaintiff] had no difficulty hearing normal conversational voices with his left ear, that he had a
normal left ear hearing test, and that he denied any problems hearing with his left ear, as well as
records indicating that a Request for Services concerning a cochlear implant had been reviewed
by the CDCR Headquarters Utilization Management committee which had determined that a
cochlear implant was not medically necessary under California Code of Regulations, title 15,
section 3350."  (ECF No. 42-1, p. 3).  "Since the available records indicated that Plaintiff had
normal hearing in his left ear and that a cochlear implant was not medically necessary to enable
him to hear normal conversations, protect his life, prevent significant illness or disability, or
alleviate severe pain, Galloway determined that no intervention was needed with respect to this
grievance on May 21, 2019."  (Id.).

As to defendant Gates, Defendants allege that "[s]ince Plaintiff's medical records
indicated that he had normal hearing in his left ear and that a cochlear implant was not
medically necessary to enable him to hear normal conversations, protect his life, prevent

significant illness or disability, or alleviate severe pain, Gates determined that no intervention was needed with respect to his grievance on September 11, 2019." (Id. at 3-4).[2]

Defendants argue that their decision to not intervene did not violate Plaintiff's Eighth Amendment rights because Plaintiff did not have a serious medical need for a cochlear implant. (Id. at 6). Plaintiff's left ear has been tested, and he hears well in that ear. (Id.). "Plaintiff has been provided with a hearing-impaired vest, so that correctional staff will know that he might not be able to hear their commands, and Plaintiff turns his head when necessary so that he can hear with his left ear and possibly read lips." (Id. at 6-7) (citation omitted). There is no evidence that Plaintiff's daily activities were significantly affected. (Id. at 7). Moreover, "[t]here is no evidence that the inability to hear with the right ear will cause a further significant injury or will result in the unnecessary or wanton infliction of pain." (Id.)

Defendants further argue that even if Plaintiff had a serious medical need, they were not deliberately indifferent to it. (Id.). At most, there is a difference of opinion. While Plaintiff and Dr. Suesberry contend that Plaintiff needs a right cochlear implant, "Defendants, supported by the CDCR Headquarters Utilization Management committee, contend it is not medically necessary because Plaintiff had no difficulty hearing normal conversational voices with his left ear, had a normal left ear hearing test, and denied any problems hearing with his left ear." (Id. at 7-8). Moreover, Plaintiff had already received a hearing-impaired vest, and "[w]hen describing the effects of not having a right cochlear implant, Plaintiff described inconveniences and difficulties in communicating and awareness of his surroundings which did not involve an excessive risk to his health and safety." (Id. at 8). Further, "the grievance submitted by Plaintiff described difficulties in communication with correctional staff which had resulted in disciplinary actions without stating that these communication issues resulted in an injury to Plaintiff or actually jeopardized his safety." (Id.). Defendants "were not subjectively aware

---

[2] Defendant Gates alleges in his declaration that he is not personally familiar with the grievance submitted by Plaintiff because "a staff services manager with signatory authority reviewed[] and signed the Headquarters Level Response on [defendant Gates'] behalf." (ECF No. 42-2, p. 34). As defendant Gates does not move for summary judgment because he was not personally involved, the Court does not address this issue. The Court notes that the Headquarters Level Response indicates that it was signed by defendant Gates. (ECF No. 14, p. 23).

4

that the lack of a right cochlear implant would constitute an excessive risk to Plaintiff's safety." (Id.).

Defendants also argue that they had no involvement in denying Plaintiff access to a medical appointment in 2016.  (Id.).

Finally, Defendants argue that they are entitled to qualified immunity because "it is not clearly established that failing to provide a right cochlear implant to an inmate with normal hearing in the left ear violates the Constitution" and because "they followed prison policies which were not patently violative of constitutional principles."  (Id. at 10).

In support of their motion for summary judgment, Defendants submit excerpts from the deposition of Plaintiff; a declaration from defendant Galloway; a declaration from defendant Gates; and medical records related to Plaintiff's care.

b.  Plaintiff's Opposition (ECF No. 55)

Plaintiff filed his opposition on October 11, 2022.  (ECF No. 55).  Plaintiff argues that the facts alleged and documents submitted show that Defendants knew that Plaintiff suffered from a hearing impairment in his right ear.  (Id. at 1).  Even though Plaintiff can hear from his left ear, he has trouble hearing most things and conversations.  (Id. at 1-2).  As Plaintiff is in prison, this impairment is a serious risk to his serious medical needs.  (Id. at 2).

Plaintiff asserts that Defendants referred him to a hearing specialist because they are not hearing specialists, and the hearing specialist found that a cochlear implant was the only option for treatment.  (Id.).  However, Defendants refused to provide the treatment because Plaintiff could hear out of one ear.  (Id.).  They did this without offering a different medical opinion. (Id. at 3).  Further, Defendants did not attempt to treat Plaintiff at all.  (Id.).

Plaintiff argues that a reasonable jury may infer that since the hearing specialist stated that a cochlear implant was the only treatment option, Defendants were deliberately indifferent by failing to follow up and provide it, or at a bare minimum, a hearing aid.  (Id. at 3).

Plaintiff further argues that the failure to provide Plaintiff with a hearing aid caused Plaintiff to be angry and to be involved in altercations with staff.  (Id.).  Because the altercations occurred two months before defendant Galloway reviewed Plaintiff's records, a

5

reasonable jury may infer that Defendants knew about these altercations and that they occurred because Plaintiff has to try "extra hard" to hear, and he has to constantly ask people to repeat themselves.  (<u>Id.</u> at 3-4).  "[T]hese were 'available' documents for his review."  (<u>Id.</u> at 4). Additionally, on March 14, 2019, Mental Health staff documented in a medical record that Plaintiff needs a staff assistant due to deafness in his right ear.  (<u>Id.</u> at 6).

Plaintiff further argues that he had a serious medical need because a hearing specialist stated that a right cochlear implant was Plaintiff's only option for treatment.  (<u>Id.</u> at 5). Defendants ignored this need.  (<u>Id.</u>).  The only thing they provided was a hearing-impaired vest, which is an admission that Plaintiff has a hearing problem.  (<u>Id.</u>).  Moreover, prison officials knew that his inability to hear out of his ear is a serious medical need because they ordered that Plaintiff be seen and treated by an ear specialist.  (<u>Id.</u> at 6).

Plaintiff alleges that he is required to follow orders by officers, including orders to get on the ground when violence erupts.  (<u>Id.</u>).  Failure to comply can result in the tower guard shooting the inmate with lethal rounds.  (<u>Id.</u>).

As to Defendants' argument regarding qualified immunity, Plaintiff argues that state regulations and federal law put Defendants on notice that hearing impaired prisoners are entitled to have their deafness treated.  (<u>Id.</u> at 8).  Plaintiff also argues that Defendants are not entitled to qualified immunity because they failed to use common sense in assessing their legal obligations.  (<u>Id.</u>).  Finally, Plaintiff argues that "[a] finding of deliberate indifference necessarily precludes a finding of qualified immunity…."  (<u>Id.</u> at 10).

In support of his opposition, Plaintiff submits his declaration, a response to a grievance he submitted, and medical records.

c.   <u>Defendants' Reply (ECF No. 56)</u>

Defendants filed their reply on October 25, 2022.  (ECF No. 56).  Defendants argue that Plaintiff failed to establish that he has a serious medical need.  (<u>Id.</u> at 1).  "Although Plaintiff claims that he can't hear on a daily basis, this claim is contrary to his previous deposition testimony as well as documents he attached to the opposition."  (<u>Id.</u> at 2).  Moreover, at most, Plaintiff established a disagreement concerning the course of treatment, which is insufficient.

(Id.).  Further, Plaintiff failed "to demonstrate that Defendants were actually aware of a serious risk to Plaintiff's health if a cochlear implant was not provided, which is an essential element of a deliberate indifference claim."  (Id.).  Additionally, Defendants are not liable for failing to provide a hearing aid because this argument is inconsistent with Plaintiff's position that the only possible treatment is a cochlear implant and because Plaintiff did not request a hearing aid. (Id. at 5-6).

Defendants also argue that they are entitled to qualified immunity.  (Id. at 6).

Finally, Defendants point out that Plaintiff "failed to reproduce the itemized facts in Defendants' Statement of Undisputed Facts, admit those facts that are undisputed and deny those that are disputed, or specify the evidence demonstrating the existence of the dispute." (Id. at 9).  Given this failure, Defendants argue that the "Court should rule that the Defendants' facts are undisputed for purposes of this motion."  (Id.).[3]

## IV.   DISCUSSION

### a.   Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (en banc) ("If there is a genuine dispute about material facts, summary judgment will not be granted.").  A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the

---

[3] The Court notes that Defendants raise new arguments in their reply.  The Court need not address the new arguments.  Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322. Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted). Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255

      b.  Legal Standards for Deliberate Indifference Deliberate Indifference to Serious Medical Needs in Violation of the Eighth Amendment

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately

indifferent." Id. (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836-37 & n.5 (1994) (citations omitted).

A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004). Additionally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106. To establish a difference of opinion rising to the level of deliberate indifference, a "plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

　　　　　c.　Legal Standards for Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In determining whether a defendant is entitled to qualified immunity, the Court must

decide (1) whether the facts shown by plaintiff make out a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct.  Pearson, 555 U.S. at 232.

To be clearly established, a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'"  Reichle v. Howards, 132 S. Ct. 2088, 2090 (2012) (quoting Al–Kidd, 563 U.S. at 741) (alteration in original).  This immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

d.  Analysis

i.  *Plaintiff's Failure to Respond to Defendants' Statement of Undisputed Facts*

Defendants are correct that Plaintiff failed to respond to their Statement of Undisputed Facts.  However, Plaintiff submitted evidence in support of his opposition. Additionally, Plaintiff cited to evidence in his opposition.  Accordingly, the Court will not treat all facts in Defendants' Statement of Undisputed Facts as undisputed on the ground that Plaintiff failed to respond to it.  Instead, the Court will consider the evidence submitted by Plaintiff.  See Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) ("[A]n ordinary *pro se* litigant, like other litigants, must comply strictly with the summary judgment rules.  *Pro se* inmates are, however, expressly exempted from this rule….  We have [] held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly.") (citations omitted).

ii.  *Serious Medical Need*

The Court now turns to whether Plaintiff submitted evidence that he has a serious medical need.  The Ninth Circuit has held that "[e]xamples of serious medical needs include [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*) (second alteration in original) (citation and

internal quotation marks omitted).

Also helpful in determining whether Plaintiff has a serious medical need is <u>Gilmore v. Hodges</u>, 738 F.3d 266 (11th Cir. 2013), in which the Eleventh Circuit found that hearing impairment is a serious medical need if it materially affects daily activities.  In <u>Gilmore</u>, a prisoner confined in a county jail suffered from hearing loss, and he wore hearing aids to correct the issue.  The prisoner's "audiologist evaluated him and diagnosed him with hearing loss that would 'interfere in all communication except face to face in quiet' and 'strongly recommended' amplification in both ears."  <u>Id.</u> at 275.  Jail assessments also noted that he had poor hearing or was hard of hearing.  <u>Id.</u>  His evidence "allow[ed] inferences that he could have had trouble hearing a fire or other alarm, responding to commands issued by guards, and reacting to a fight behind him or to prisoners threatening his safety."  <u>Id.</u> at 275-76.

The <u>Gilmore</u> court held that "[t]he ability to hear is a basic human need materially affecting daily activity and a substantial hearing impairment plainly requires medical treatment by a physician," <u>id.</u> at 275, and found that Plaintiff made out a violation of his constitutional rights, <u>id.</u> at 277.

However, the <u>Gilmore</u> cautioned "that not all hearing loss amounts to a serious medical condition."  <u>Id.</u> at 276.

> Thus, for instance, if a plaintiff can "carry on a normal conversation" and hear and follow directions without the use of a hearing aid, a court would be hard pressed to classify the plaintiff's impairment as a serious medical need. *Chacon v. Ofogh*, No. 7:08–cv–00046, 2008 WL 4146142, at *4 (W.D.Va. Sept. 8, 2008); *see also Irby v. Sumnicht*, 683 F.Supp.2d 913, 915–16 (W.D.Wis.2010) (granting summary judgment to defendant where inmate plaintiff already had one functioning hearing aid and presented no evidence to support his claim that the denial of a second hearing aid caused him pain, interfered with his daily activities, or subjected him to a substantial risk of harm); *Smith v. Masterson*, 538 F.Supp.2d 653, 659 (S.D.N.Y.2008), *aff'd*, 353 Fed.Appx. 505 (2d Cir.2009) ("While the ability to hear is 'a basic human need affecting daily activity and sufficiently serious to warrant treatment by physicians,' this record has established that [an inmate] has normal hearing and was not in need of the hearing aids he inappropriately received, nor any other accommodations." (quoting *Degrafinreid v. Ricks*, 417 F.Supp.2d 403, 412 (S.D.N.Y.2006))).

\\\

Id. at 276-77 (alteration in original).[4]

Pursuant to the Ninth Circuits standards, as well as the persuasive authority of Gilmore, the Court finds that there is a genuine dispute of material fact regarding whether Plaintiff had a serious medical need.  For purposes of summary judgment, it is undisputed that Plaintiff can hear out of his left ear, but not his right ear.  Defendants Statement of Undisputed Facts ("SUF"), ¶¶ 5 & 6; ECF No. 55, pgs. 1-2.[5]  It is also undisputed that an Ear, Nose, and Throat specialist examined Plaintiff's right ear, found that Plaintiff's right ear has "basically no serviceable hearing," and issued a report indicating that Plaintiff's only treatment option was a right cochlear implant.  SUF ¶¶ 12-14; ECF No. 55, p. 18.

Moreover, there is evidence that this hearing impairment materially/substantially affected his daily activities.  In the grievance submitted by Plaintiff that was reviewed by Defendants,[6] Plaintiff stated that the hearing loss was affecting his daily activities.  (ECF No. 14, p. 14).  Plaintiff went on to specify that it interfered with his ability to communicate with staff and inmates.  (Id.).  This comports with evidence presented to the Court, including Plaintiff's declaration where he states that he cannot understand what is being said most of the time (ECF No. 55, p. 12), and his deposition, where he stated that he cannot hear correctional officers who talk to him from the tower or over the loudspeaker (ECF No. 42-2, 24:23-25:18).  Additionally, at his deposition, Plaintiff provided an example where he did not know that a fight was going on because he had headphones over one ear and could not hear out of the other.  (Id. at 25:19-25; 26:16-18).  Plaintiff also could not hear officers yelling at him to get down, and he ended up having a gun pointed at him.  (Id. at 25:19-25).  Plaintiff stated that, unlike other inmates, he is unable to take one headphone off and still listen to everything else.  (Id. at

---

[4] See also De Rossitte v. Correct Care Sols., LLC., 22 F.4th 796, 803 n. 3 (8th Cir. 2022) ("We agree with other circuits that, in certain circumstances, severe hearing loss may be a serious medical need under the deliberate indifference standard.") (citation and internal quotation marks omitted).

[5] See also ECF No. 55, p. 18 (report from an Ear, Nose, and Throat specialist stating that Plaintiff's right ear has "basically no serviceable hearing.").

[6] It does not appear that either party submitted a copy of this grievance.  However, a copy is attached to Plaintiff's First Amended Complaint (ECF No. 14, pgs. 14-16), and it is thus part of the record in this case.  Moreover, Defendants refer to this grievance in their motion (see, e.g., ECF No. 42-1, p. 8), and cite to it in their reply (ECF No. 56, p. 5).

24:1-5).  Moreover, Plaintiff submitted evidence, in the form of an evaluation, that when he received a Rules Violation Report in 2019, he was assigned a staff assistant due to his hearing issues.  (ECF No. 55, p. 22).[7]  Finally, as Defendants admit, Plaintiff was "provided with a hearing-impaired vest, so that correctional staff will know that he might not be able to hear their commands."  (ECF No. 42-1, pgs. 6-7).  There is at the very least a dispute of fact regarding whether Plaintiff has a serious medical need.

The Court notes that Defendants argue that Plaintiff's contention that he cannot understand what is being said most of the time "is contrary to the deposition testimony that he can hear 'okay' and contrary to the records documenting that he can comprehend and understand what he was told and had no difficulty hearing in normal conversation."  (ECF No. 56, p. 3).  However, Defendants overstate their evidence.  While Plaintiff admitted he can hear "okay" from his left ear (ECF No. 42-2, 12:12-14), he also stated that if someone was jingling keys on his right side, he would not be able to hear them well, and would have to turn and try to read lips (id. at 11:14-12:2).  Moreover, as discussed above, at his deposition Plaintiff provided examples of times he cannot hear correctional officers speaking to him.  Thus, while Plaintiff admitted he can hear from his left ear, he also testified to serious difficulties from lack of hearing in his right ear.

Defendants also refer to a grievance response, which states that Plaintiff's primary care provider ("PCP") stated that Plaintiff could understand and comprehend what was being told to him.  (ECF No. 55, p. 15).  However, this response, which contains a statement from one doctor, does not objectively disprove that Plaintiff has no difficulty hearing conversations in prison.[8]  Moreover, in the grievance, Plaintiff explained why he could hear the conversation

---

[7] Defendants allege that Plaintiff submitted no evidence that they were made aware of the Rules Violation Report or the evaluation.  (ECF No. 56, p. 5).  However, even if this is true, the Court is analyzing whether Plaintiff had a serious medical need, not whether Defendants were deliberately indifferent to that need.

[8] Defendants cite to Scott v. Harris, 550 U.S. 372, 380 (2007).  However, in Scott, there was a videotape that contradicted the plaintiff's version of events, and there was no indication that the videotape was doctored or altered.  Id. at 378.  Here, there is no evidence that is capable of objectively disproving Plaintiff's allegations that he has difficulty in hearing conversations.  See, e.g., Hughes v. Rodriguez, 31 F.4th 1211, 1218 (9th Cir. 2022) ("While Scott involved dashcam video footage, courts have since applied its logic to other types of evidence capable of objectively disproving witness testimony.").

with his PCP, but not in other circumstances.  (ECF No. 14, p. 15) ("PCP noted his audio observations of patient, which were conducted under environmentally sound conditions as that of a quiet office setting, void of any ambient background noises, such that exist in a housing unit, on a recreation yard, in a dining hall, and/or while walking outside under officer escorts where people are yelling.").  Thus, while this grievance response may be evidence that Plaintiff does not have a serious medical need, it is not sufficient to show that there is no genuine dispute of material fact.

Accordingly, there is evidence in the record from which a fair-minded jury could reasonably find that Plaintiff has a serious medical need, and Defendants are not entitled to summary judgment on this issue.

### iii.  *Deliberate Indifference*

The Court next turns to whether Plaintiff submitted evidence that Defendants were deliberately indifferent to his serious medical need.

Here, there is evidence that Defendants knew that Plaintiff could not hear out of his right ear, and that this impairment was substantially/materially affecting his daily activities.  Defendants admit that defendant Galloway referred Plaintiff to an Ear, Nose, and Throat specialist in March of 2019.  SUF ¶¶ 10-12.  Further, in response to Plaintiff's grievance, defendant Galloway referred to that Ear, Nose and Throat specialist's report, which indicated that Plaintiff had basically no serviceable hearing in his right ear and that the only option for treatment is a cochlear implant.  (ECF No. 55, pgs. 15 & 18).[9]  Defendant Gates also stated that he reviewed the grievance package and the health record.  (ECF No. 14, p. 22; ECF No. 42-1, pgs. 3-4).  Moreover, in his grievance, Plaintiff stated that the hearing loss was affecting his daily activities, and Plaintiff went on to specify that it interfered with his ability to communicate with staff and inmates.  (ECF No. 14, p. 14).  In the section of the grievance for explaining why he was dissatisfied with the Institutional Level response, Plaintiff also explained why he could hear the conversation with his PCP but had trouble hearing

---

[9] The Court notes that in his opposition, Plaintiff repeatedly asserts that Defendants should have at least provided a hearing aid.  However, Plaintiff submitted no evidence suggesting that a hearing aid would be effective.

conversations in other circumstances.  (ECF No. 14, p. 15).  Despite being aware of Plaintiff's serious medical need, Defendants did not provide treatment or intervene in any way.  Thus, there is evidence that Defendants knew that Plaintiff had a serious medical need, yet disregarded that need.

Moreover, Defendants denied Plaintiff treatment in large part, if not entirely, because he had normal hearing in his left ear (ECF No. 42-2, p. 11; ECF No. 42-2, p. 31; ECF No. 42-2, p. 35), and Defendants contend that this comports with prison policy (ECF No. 41-1, p. 11).  On this point, the Court finds the Ninth Circuit decision in <u>Colwell v. Bannister</u>, 763 F.3d 1060 (9th Cir. 2014), to be instructive.  In <u>Colwell</u>, the Ninth Circuit was confronted with a "'one eye policy'—cataract surgery [was] refused if an inmate can manage to function in prison with one eye." <u>Id.</u> at 1063.  In that case, the plaintiff developed a cataract in his right eye that rendered him totally blind in that eye.  <u>Id.</u>  The medical director of the institution declared that "a cataract does not cause pain, require urgent attention, or lead to permanent vision loss.  He declared further that a delay in removing a cataract causes no harm." <u>Id.</u>  Although medical providers had recommended treatment, the plaintiff's requests for surgery were denied by the Utilization Review Panel. <u>Id.</u> at 1064.  The plaintiff filed grievances "complaining that although Dr. Fischer had recommended surgery, Dr. Snider told him that the 'department policy is 'one eye only' is needed' and the surgery would not be approved." <u>Id.</u>  The district court had held that the defendants were not deliberately indifferent because "'medical providers have determined that surgery is not medically warranted in light of Plaintiff's overall visual acuity and ability to adequately function.'" <u>Id.</u> at 1065.  The Ninth Circuit reversed, stating: "We hold today, as numerous other courts considering the question have, that blindness in one eye caused by a cataract is a serious medical condition.  We also hold that the blanket, categorical denial of medically indicated surgery solely on the basis of an administrative policy that 'one eye is good enough for prison inmates' is the paradigm of deliberate indifference." <u>Id.</u> at 1063.  The Court further explained:

> This is not a case in which there is a difference of medical opinion about which
> treatment is best for a particular patient.  Nor is this a case of ordinary medical
> mistake or negligence.  Rather, the evidence is undisputed that [the plaintiff]

> was denied treatment for his monocular blindness solely because of an administrative policy, even in the face of medical recommendations to the contrary. A reasonable jury could find that [the plaintiff] was denied surgery, not because it wasn't medically indicated, not because his condition was misdiagnosed, not because the surgery wouldn't have helped him, but because the *policy* of the NDOC is to require an inmate to endure reversible blindness in one eye if he can still see out of the other. This is the very definition of deliberate indifference.

Id. at 1068.

Like Colwell, Defendants denied Plaintiff treatment for Plaintiff's right ear in large part, if not entirely, because he had normal hearing in his left ear, and have alleged that this comports with prison policy. Accordingly, Defendants' motion for summary judgment should be denied for the same reasons.

Defendants argue that, at most, Plaintiff's evidence shows a difference of opinion concerning a course of medical treatment. (ECF No. 56, p. 4). However, the Court does not find this argument persuasive. As discussed above, Plaintiff has submitted evidence that he had a serious medical need, that Defendants knew of this need, and that Defendants refused to provide treatment. Refusing to provide treatment when presented with a serious medical need is not the same as disagreeing with a particular course of treatment. For example, Defendants did not find that a different course of treatment, such as providing a hearing aid, was more appropriate. Instead, they provided no treatment in response to the serious medical need, and assert that this comports with policy.[10]

Defendants also argue that they did not know of and disregard an excessive risk to health and safety. This argument is not persuasive either. Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). As discussed in detail above, Plaintiff has submitted evidence that he had a serious medical need and that Defendants purposefully failed to respond to that need.

Thus, there is evidence before the Court that Defendants were aware of Plaintiff's

---

[10] To the extent Defendants argue that providing Plaintiff with a hearing-impaired vest constitutes treatment, Defendants do not submit any evidence or cite to any case law suggesting that a hearing-impaired vest constitutes treatment.

serious medical need, and that despite being aware of the medical need, refused to provide treatment.  Defendants do not truly contest these issues.  Instead, they claim that they relied on prison policy in deciding that they had no legal obligation to treat Plaintiff's hearing impairment because Plaintiff could adequately hear out of his other ear.  But Defendants had a constitutional obligation to treat a serious medical need regardless of whether they were told otherwise by prison policy or any other source.

Finally, the Court notes that, for the first time in their reply, Defendants argue that they were not deliberately indifferent because they were entitled to rely on records created by medical professionals in denying Plaintiff's request for care.  (ECF No. 56, pgs. 4-5).  As Defendants raised this argument for the first time in their reply, the Court need not address this argument.  Zamani, 491 F.3d at 997 ("The district court need not consider arguments raised for the first time in a reply brief.").  However, even if the Court were to consider this argument, the Court would not recommend that Defendants be granted summary judgment.  Again, the other medical professionals confirmed that Plaintiff lacked hearing in one ear, was receiving no treatment for his condition, and that he required treatment to alleviate that condition.  This is not a case about a difference of opinion as to treatment options.  Instead, Defendants in essence claim that they may rely on someone else to say they have no legal obligation to treat one ear so long as the patient can hear adequately using his other ear.  That is at most a difference of opinion on what the law requires, which is not the same as a difference of opinion regarding the acceptable medical treatment.

Additionally, the only binding authority cited by Defendants is Peralta v. Dillard, 744 F.3d 1076 (9th Cir. 2014), which found that the defendant, who signed the plaintiff's second-level appeal, was not deliberately indifferent to the plaintiff's serious medical needs.  However, in Peralta, the defendant who signed the grievance "understood his role to be largely administrative, ensuring that the proper personnel had signed off on a reasonable course of treatment, not second guessing staff dentists' medical judgments."  Id. at 1086.  Moreover, it appears to have been undisputed that the defendant "had no expertise to contribute to that review."  Id.  Here, there is no evidence before the Court that Defendants' roles were largely

administrative or that Defendants had no relevant expertise.  Moreover, no medical expertise was required to understand that Plaintiff could not hear out of one ear and was not being treated for that condition.

### iv.  *Qualified Immunity*

Finally, the Court turns to whether Defendants are entitled to qualified immunity. Defendants argue that they are entitled to qualified immunity because "it is not clearly established that failing to provide a right cochlear implant to an inmate with normal hearing in the left ear violates the Constitution."  (ECF No. 42-1, p. 10).  However, Defendants define the right far too narrowly.

In determining whether a right is clearly established, "[i]n the Ninth Circuit, we begin our inquiry by looking to binding precedent.  If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end."  Boyd v. Benton County, 374 F.3d 773, 781 (9th Cir. 2004) (citation omitted).  "[I]n the absence of binding precedent, we look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts."  Id. (citation and internal quotation marks omitted).

The Court finds that it is clearly established that the loss of an organ is a serious medical need when that loss seriously/materially affects daily activity.  It has long been established in the Ninth Circuit that an individual has a serious medical need if they have a condition "that significantly affects an individual's daily activities."  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (second alteration in original) (citation and internal quotation marks omitted).  And, as discussed above, there is a genuine dispute of material fact as to whether Plaintiff has such a need.  Moreover, the Ninth Circuit has held that loss of function of one organ is a serious medical need even if another organ with similar function remains.  Colwell, 763 F.3d at 1066 ("We agree with the district court that monocular blindness is a serious medical need.  Although blindness in one eye is not life-threatening, it is no trifling matter either.  It is not a bump or scrape or tummy ache.  Monocular blindness is the loss of the function of an organ.").  Although Colwell dealt with loss of vision in one eye rather than

hearing in one ear, it clearly established that it is deliberate indifference to refuse to treat loss of function in one organ on the ground that there is still another similar organ left.

Accordingly, the Court finds that the right at issue was clearly established at the time of the incident(s) alleged in the complaint.

Defendants also argue that they are entitled to qualified immunity "because they followed prison policies which were not patently violative of constitutional principles." (ECF No. 42-1, p. 10). "[W]hen a public official acts in reliance on a duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity." Dittman v. California, 191 F.3d 1020, 1027 (9th Cir. 1999) (citing Grossman v. City of Portland, 33 F.3d 1200, 1210 (9th Cir.1994)). This is known as the Dittman/Grossman rule. Cmty. House, Inc. v. City of Boise, Idaho, 623 F.3d 945, 965 (9th Cir. 2010). The reason for this rule is that "an officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability." Grossman v. City of Portland, 33 F.3d 1200, 1210 (9th Cir. 1994). "The existence of an authorizing statute is not dispositive, however. Qualified immunity does not extend to a public official who enforces a statute that is 'patently violative of fundamental constitutional principles.'" Dittman v. California, 191 F.3d 1020, 1027 (9th Cir. 1999) (quoting Grossman, 33 F.3d at 1209).

Here, even assuming the Dittman/Grossman rule applies to prison regulations, it does not apply to the situation in this case. According to Defendants, "Defendants determined that no intervention was necessary, in part, because the CDCR Headquarters Utilization Management committee had determined that a cochlear implant was not medically necessary under California Code of Regulations, title 15, section 3350. This section defines treatment which is medically necessary in terms of being reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care." (ECF No. 42-1, pgs. 10-11) (citations omitted).

However, the case here is distinguishable from the only case cited by Defendants. Defendants cite to Dittman, a case in which the defendants refused to renew the plaintiff's license because he did not provide his social security number on an application. 191 F.3d at

1025.  In so refusing, the defendants relied on a statute that required applicants to disclose their

social security number.  Id.  See also Grossman, 33 F.3d at 1209-10 (granting qualified

immunity to the defendant because the defendant arrested the plaintiff for demonstrating

without a permit pursuant to a statute that made it unlawful to demonstrate without a permit).

Here, unlike the statutes at issue in Dittman and Grossman, section 3350 does not

dictate the outcome.  That is, in Dittman the defendants denied the plaintiff's application

because the plaintiff violated a statute, and in Grossman the defendant arrested the plaintiff

because the plaintiff violated a statute.  In both cases, the plaintiff violated a statute, and the

defendants were merely enforcing the clear terms of that statute.  Here, there is no evidence

before the Court suggesting that Defendants were merely enforcing the clear terms of a statute

or regulation.  Defendants assert that the regulation "defines treatment which is medically

necessary in terms of being reasonable and necessary to protect life, prevent significant illness

or disability, or alleviate severe pain, and are supported by health outcome data as being

effective medical care," (ECF No. 42-1, p. 11), but nothing in this definition directed or

required Defendants to deny Plaintiff treatment for his right ear simply because he could hear

normally out of his left ear.  As there is no evidence before the Court that Defendants were

merely enforcing the terms of a properly enacted regulation, the Dittman/Grossman rule is not

applicable here.

Moreover, if § 3350 did require Defendants to deny Plaintiff treatment for his inability

to hear out of his right ear simply because he could hear normally out of his left ear, § 3350 is

patently violative of fundamental constitutional principles, and Defendants would not be

entitled to qualified immunity for relying on it.  In the Ninth Circuit case of Colwell, which was

decided in 2014, the court found that "blanket, categorical denial of medically indicated

surgery solely on the basis of an administrative policy that 'one eye is good enough for prison

inmates' is the paradigm of deliberate indifference."  Id. at 1063.  If § 3350 similarly stated

that, in essence, one ear is good enough for prison inmates, this would also be the paradigm of

deliberate indifference and such a regulation would be patently violative of fundamental

\\\

constitutional principles.[11]

Accordingly, based on the foregoing, the Court finds that Defendants are not entitled to summary judgment on the basis of qualified immunity.[12]

## V.   RECOMMENDATIONS

Accordingly, based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' motion for summary judgment (ECF No. 42) be DENIED.

These findings and recommendations are submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **February 28, 2023**          /s/ Erica P. Grosjean

                                             UNITED STATES MAGISTRATE JUDGE

---

[11] The Court will not address any arguments Defendants raised for the first time in their reply.

[12] Defendants also argue that they are entitled to summary judgment because they did not deny Plaintiff access to an appointment in 2016.  (ECF No. 42-1, p. 8).  However, as discussed above, the Court finds that there is a genuine dispute of material fact regarding whether Defendants were deliberately indifferent to Plaintiff's serious medical need, and that Defendants are not entitled to summary judgment on the issue of qualified immunity.  Accordingly, the Court does not address this particular factual issue.